```
                                              FILED
        IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ALABAMA
                  SOUTHERN DIVISION          98 JUN 19 PM 3:30
```

VULCAN INFORMATION PACKAGING, }  U.S. DISTRICT COURT
a division of EBSCO           }   N.D. OF ALABAMA
INDUSTRIES, INC.,             }
                              }   CIVIL ACTION NO.
     Plaintiff                }
                              }   98-AR-1332-S
     vs.                      }
                              }   ENTERED
SHAWN SMITH,                  }
                              }   JUN 19 1998
     Defendant                }

## MEMORANDUM OPINION

The above-entitled case was removed to this court from the Circuit Court of Shelby County, Alabama, by defendant Shawn Smith ("Smith") who alleges complete diversity of citizenship. Plaintiff, Vulcan Information Packaging ("Vulcan"), has filed a motion to remand. It is undisputed that Vulcan and Smith are residents of different states; however, Vulcan denies that the requisite amount in controversy exists. The pertinent statutory provision is 28 U.S.C. § 1332, which provides that the amount in controversy must exceed $75,000, exclusive of interest and costs, before jurisdiction can attach.

In its motion to remand, Vulcan points out that it "has not pled any claim for money damages." However, Vulcan winds up its complaint with the prayer for "such other and further relief as this Court may deem appropriate under the circumstances." Whether

a court would "deem" money damages to be appropriate relief under the circumstances of this case is a matter of conjecture, but this court easily can see how money damages might well be appropriate to recompense Vulcan for the adverse effect on it occurring between the moment Smith first violated the employment agreement and the moment he is enjoined, if he is. What such damage could amount to is anybody's guess, but it could be sizeable.

Vulcan preceded its prayer for unspecified appropriate relief with an express prayer for attorneys fees against Smith pursuant to Ala. Code § 8-27-1, *et seq.* The contract provides for attorneys fees, an issue that would be tried to a jury under the Seventh Amendment. Alabama's statutory provision has been given the same construction by its Supreme Court as that given by the federal courts on how to fix attorneys fees, thus making the "lodestar" and the reasonable number of lawyer-hours the predominant factors for determining the fee. This means that the importance or the size of the relief obtained is not the controlling factor. See *Ex parte Edwards*, 601 So. 2d 82 (Ala. 1982), wherein the Supreme Court of Alabama reversed a trial court for awarding a plaintiff's attorneys fee of $9,000 in a case in which the plaintiff recovered less than $9,000 in value. In *Edwards*, the Supreme Court of Alabama multiplied what it determined to be the "lodestar" by the number of lawyer-hours reasonably spent and came up with a fee of $42,945.50. Vulcan has not disclaimed the possibility of its attorneys fee

2

exceeding $75,000, and, in this court's judgment, this case, considering the hourly rates regularly charged by Vulcan's attorneys and the number of hours, could raise the attorneys fee to the $75,000 mark, particularly if the case should go to a hearing on preliminary injunction, to a trial on the merits and to an appeal. A jury trial just on the attorneys fee could push the fee upwards a few notches. The precedent surrounding the enforceability of Vulcan's executive employment agreements, from Vulcan's standpoint, is obviously an important consideration for it. Success in this case could have monetary value well beyond the mere value from stopping Smith.

In the event Vulcan's potential attorneys fee does not exceed $75,000, the removing defendant argues that the injunctive relief sought by Vulcan can be translated into a monetary value of a very sizeable amount. Vulcan counters with the argument that any injunctive relief it receives is worthless to it in terms of money. Alternatively, Vulcan argues that such relief is so speculative as to be untranslatable into monetary value, based on the lesson of *Ericsson GE Mobile Comm. v. Motorola Comm. & Elect., Inc.*, 120 F.3d 216 (11th Cir. 1997), a recent case with which this court is all too familiar. See *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Electronics, Inc.*, __ F.R.D. __, 1998 WL 146605 (N.D. Ala.).

While this court quarrels with the Eleventh Circuit's opinion

3

in *Ericsson GE*, this court recognizes that it is bound by *Ericsson GE*, despite the Eleventh Circuit's earlier opinion in *Occidental Chemical Corporation v. Bullard*, 995 F.2d 1046, 1047 (11th Cir. 1993), in which the Eleventh Circuit held:

> Similarly, "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advt'g Comm'n*, 432 U.S. 333, 347-48, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 (1977).

Assuming, as the court must, either that *Ericsson* either overruled *Occidental* or clarified it out of existence, the instant case can be distinguished from *Ericsson*. In *Ericsson*, the only relief that was available to, and that was erroneously granted to, Ericsson was the interruption of a contractual relationship between the City of Birmingham and Motorola, an interruption which <u>might</u> have created an opportunity for Ericsson to become the successful bidder on a major communications job, if, and only if, that job was rebid. In *Ericsson,* the Eleventh Circuit held that such a possibility was so speculative that it could not be translated into relief <u>for the plaintiff</u> of a value equal to or exceeding the jurisdictional amount required by 28 U.S.C. § 1332. In contrast, if in the instant case an injunction were obtained by Vulcan that prevented Smith, who had been Vulcan's regional sales manager, from violating any of the valuable terms of his employment agreement, such as the sharing of confidential proprietary information and/or working for a competitor, such relief would be qualifiable, even though placing

4

a precise figure on it may be difficult. The mere fact that there is a legitimate difference of opinion over the value of such injunctive relief does not eliminate the basis for diversity jurisdiction. Vulcan's allegations that Smith's alleged breach of contract "has caused, and threatens to cause, <u>substantial</u> and irreparable harm to Vulcan" (emphasis supplied) strongly suggests that Vulcan has a sizeable vested interest in the outcome here and not the totally speculative or academic interest that Ericsson had.

Vulcan argues that the burden is on Smith to show the existence of the $75,000 jurisdictional minimum by demonstrating its existence to a "legal certainty," whatever that means. In the opinion of this court, the "legal certainty" test is different in its application with respect to an original complaint filed in a federal court versus a case removed from a state court. In the former instance, the plaintiff must only establish that it does <u>not</u> appear to a legal certainty that the claim is <u>below</u> the jurisdictional minimum in order to get into federal court. Moore's Federal Practice § 102.106[1]. However, in determining whether subject matter jurisdiction exists under 28 U.S.C. § 1332, federal courts must be confident that the plaintiff cannot recover the jurisdictional amount before dismissing the case for want of jurisdiction. The element of judgment comes into play. A removing defendant seeking refuge in a federal court has the right to worry over the magnitude of what plaintiff seeks when the plaintiff's

5

state court complaint is ambiguous or hard to quantify. For instance, in *Occidental Chem. Corp. v. Bullard, supra*, a case premised on diversity, the plaintiff was suing to recover real property, and it claimed that the fair market of that property value exceeded the jurisdictional minimum. The fact that the defendant there challenged plaintiff's assertion that the property's fair market value exceeded the minimum did not prevent jurisdiction from attaching under the "legal certainty" standard. If the plaintiff in *Occidental* had sued in a state court, and the defendant had removed by alleging that the value of the real property in dispute exceeded the jurisdictional minimum, the removal would have been effective. Smith's allegation in this case similarly and reasonably places a value on the relief sought by Vulcan of $75,000 or more.

The court does not doubt the good faith of Vulcan, which characterizes its complaint as seeking less than $75,000 in value. Neither does this court doubt the good faith of Smith when he asserts that Vulcan's recovery can be anticipated to exceed $75,000 in value. This court is known for its insistence on the requisites for subject matter jurisdiction before it will proceed in a case. That is why, when knowledgeable members of the bar of this court see the initials "AR" on a case they have just removed, they sigh, "Already Remanded." Nevertheless, this court does not hesitate to proceed when, after careful consideration, it determines that all

jurisdictional elements are present. In this case the court, in an exercise of its best judgment, based on its long experience as well as on the analysis presented by Smith in his affidavit, concludes that the removing defendant has met his burden of proving the $75,000 jurisdictional amount and, therefore, that his notice of removal was efficacious. Accordingly, a separate order denying the motion to remand will be entered.

DONE this 19th day of June, 1998.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE